**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

**CIVIL ACTION NO. 05-262-JBC**

**BILLY DARRELL HALL,**                                                    **PLAINTIFF,**

**V.**                    **MEMORANDUM OPINION AND ORDER**

**HARTFORD LIFE & ACCIDENT**
**INSURANCE COMPANY,**                                               **DEFENDANT.**

* * * * * * * * * *

This matter is before the court on the plaintiff's motion for judgment

reversing the administrative decision terminating his long-term disability ("LTD")

benefits (DE 14) and the defendant's counterclaim for declaratory judgment (DE 4).

The court, having reviewed the record and being otherwise sufficiently advised, will

grant the plaintiff's motion, grant the defendant's motion, and remand this case to

the administrator for further proceedings.

**I.      Background**

The plaintiff was employed as a project manager/estimator at TECO

Mechanical Contractor, Inc. ("TECO").  His duties included assisting and

supervising employees on the jobsite, coordinating work, and estimating and

bidding on jobs.  His work required him to climb, stoop, bend, lift, stand and sit.

The plaintiff underwent a multi-level cervical corpectomy for severe cervical

myelopathy in February 2002.  The plaintiff claims that he became disabled one

month prior to the surgery, when the myelopathy was diagnosed and the operation

recommended, and that his disability continues to prevent him from performing any

work.

TECO employees are covered by an LTD plan ("Plan"), governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, that is administered by Hartford.[1]  Under the terms of the plan, an employee is entitled to receive LTD benefits if he is "disabled;" the definition of "disability" depends on the time period for which benefits are sought.  During the "elimination period" and the following twenty-four months, "disability" is physical or mental impairment of such severity that it renders the employee

> 1.   continuously unable to perform the *Material and Substantial Duties of Your Regular Occupation*; and
>
> 2.   not working for wages in any occupation for which *You* are or become qualified by education, training or experience.

Hartford determined that the plaintiff met these criteria and paid him LTD benefits from July 9, 2002, through July 9, 2004.

After the first twenty-four months of payments, benefits are paid only if the employee's disability not only restricts him from performing his own occupation but also renders him unable to perform any other occupation for which he is qualified. Disability at that point is defined as an impairment of such severity that the employee is

> 1.   continuously unable to engage in any occupation for

_____

[1] Hartford Life Group Insurance Co., not Hartford Life & Accident Insurance Co., is the proper defendant.  Hartford is the successor in interest to the rights and obligations of Continental Casualty Company under the policy.

2

which *You* are or become qualified by education, training or experience; and

2.    not working for wages in any occupation for which *You* are or become qualified by education, training or experience.

At issue in this case is whether, after the expiration of the initial twenty-four-month period, the plaintiff was "unable to engage in *any occupation*" for which he was qualified.

The plaintiff began seeking treatment from Dr. Phillip A. Tibbs on January 15, 2002.  Dr. Tibbs diagnosed the plaintiff with cervical spinal stenosis and myelopathy.  An MRI scan revealed that the plaintiff was hyperreflexive throughout with three beats of clonus, and a Hoffman's MRI showed cord compression.  On June 24, 2002, Dr. Tibbs stated that the plaintiff's prognosis was undetermined. Dr. Tibbs explained that the plaintiff "has chronic cervical myelopathy and neuropathic lower extremity pain.  He should not return to work at this time as he still has significant neurological dysfunction and it would not be safe for him to participate in his professional duties."

The plaintiff applied for and was awarded Social Security Income benefits and Dependent Social Security Income benefits retroactive to April 1, 2002. Hartford contacted the plaintiff by letters dated January 5, 23, and 27, 2004, to request reimbursement as a result of his award.  Hartford reiterated his repayment obligation in its June 24, 2004, letter informing him that his benefits would terminate effective July 9, 2004.

3

Hartford contacted Dr. Tibbs for a functional assessment tool in July 2002, and Dr. Tibbs responded that "[w]e do not perform functional capacity assessments." Nonetheless, Dr. Tibbs opined that the plaintiff was incapable of performing work that required frequent sitting and standing/walking and intermittent climbing and bending. Dr. Tibbs again stated that he could not determine when the plaintiff would be able to return to his occupational duties, but he felt that it would not be safe for him to return to work at that time due to his neurological dysfunction.

Dr. Tibbs responded to another request for a functional assessment tool on November 26, 2002, to gauge the improvement in the plaintiff's range of motion as reflected in his physical therapy notes. Dr. Tibbs continued to believe that, due to "residual neuropathic pain," the plaintiff could not frequently sit or occasionally drive, walk, climb, bend, or lift twenty pounds. With regard to the plaintiff's specific limitations at that time, Dr. Tibbs stated that he is "unable to perform his job as a plumber - recheck 2/18/03." Hartford responded to Dr. Tibbs's assessment in January 2003 to confirm whether, as reported by the plaintiff on July 17, 2002, he could walk in the yard and drive on a limited basis, had difficulty moving his head, and could not lift, pull, push, squat, stoop, or stand on concrete too long. Dr. Tibbs confirmed those limitations, but when asked what he believed to be the plaintiff's specific limitations, he stated "[w]e do not perform functional capacity assessments" and that the plaintiff was scheduled for a follow-up in

4

February.

On January 28, 2003, Thomas F. Casella, one of Hartford's vocational case managers, contacted the plaintiff to inform him of the change in disability requirements after the initial twenty-four month period.  Hartford wrote that, based on a January 24, 2003, report from Dr. Tibbs that he had difficulty moving his head and could not walk, lift, push, pull, stoop, or stand on concrete for long periods of time, although he could no longer perform his past work, "[i]t is reasonable that you could perform full time seated/sedentary work."  The letter informed the plaintiff that his benefits would therefore end on July 9, 2004, but prompted him to let Hartford know if his situation changed.  Hartford again contacted the plaintiff on March 28, 2003, and reiterated the opinion that he could perform other occupations and that his LTD benefits would terminate after twenty-four months.

In May 2004, Hartford attempted to contact the plaintiff for a follow-up interview to re-evaluate his disability claim; the plaintiff's phone number was disconnected, and the plaintiff did not respond to a letter attempting to contact him.  Hartford officially informed the plaintiff that his benefits were terminating by letter dated June 24, 2004.  The vocational case manager, Raenell May, considered his responses in a July 17, 2002, vocational interview.  She acknowledged that, in addition to the restrictions detailed by Dr. Tibbs on January 24, 2003, his left hand and left side are worse, he experiences numbness in both hands, his legs give out,

and he takes several medications.  The letter notified the plaintiff that Dr. Tibbs had not responded to requests for information made by Hartford on May 24, 2004, and June 14, 2004.

The plaintiff appealed Hartford's decision.  In the course of the appeal, Hartford contacted Dr. Tibbs to request additional information to assess the plaintiff's "medical status and functional ability to perform work activity."  Hartford also encouraged the plaintiff to promptly submit release authorizations to Dr. Tibbs. Dr. Tibbs did provide Hartford with records dated June 8, 2004, and July 6, 2004. Dr. Tibbs's June 8, 2004, correspondence informed the appeals panel that the plaintiff had recently developed C6-C7 numbness in his fingers, he exhibited 5/5 strength, and he was hyperreflexive throughout with equivocal Hoffman's.   The July 6, 2004, letter was more detailed, but essentially reiterated many of his June 8, 2004, observations.  Dr. Tibbs characterized the plaintiff's myelopathy as severe.   An MRI performed in the interim revealed severe degenerative disc disease, residual canal stenosis at C3 through C6, and post-operative changes with evidence of scarring of the cord.  He concluded that "[w]e believe it is within all reasonable medical probability that Mr. Hall is disabled from any viable occupation, given his education, work experience and current symptomology.  We cannot release him to safely work at his job as a plummer [sic] or at any other job at this time."

The plaintiff was informed that his appeal was denied on November 16,

2004.  Because Dr. Tibbs "did not perform an extensive physical examination,"
Hartford was "not able to correlate the findings with your symptoms to determine if
your function has been reduced to what would be considered *less-than-sedentary-
type* work activity."  Hartford summarized that there was no medical evidence to
support the plaintiff's claim of continued impairment.  Furthermore, Hartford stated
that, in a previous interview, the plaintiff's answers indicated that he was capable
of functioning at the sedentary level.

## II.    Legal Analysis

Summary judgment is appropriate only when there are no genuine issues of
material fact and the moving party is entitled to a judgment as a matter of law.
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The moving party's burden can be
satisfied by demonstrating that there is an absence of evidence to support the non-
moving party's case.  *Id*. at 324-25.  To survive summary judgment, the non-
moving party must come forward with evidence on which the jury could reasonably
find in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  The non-
moving party must present more than a mere scintilla of evidence to defeat a
motion for summary judgment.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472,
1479 (6th Cir. 1989); Fed. R. Civ. Pro. 56 (e).  The court must view all of the
evidence in the light most favorable to the party opposing summary judgment.  *See
Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

This action is a suit to recover LTD benefits.  Under ERISA, a district court

analyzes the decision of the plan administrator under either a *de novo* or an

arbitrary and capricious standard of review, depending on whether the plan grants

the administrator discretionary authority.  *Sanford v. Harvard Indus., Inc.*, 262 F.3d

590, 596 (6th Cir. 2001).

      In this case, the Plan explicitly grants discretionary authority to the Plan

administrator, and accordingly, the court will apply an arbitrary and capricious

standard of review.  There is an inherent conflict of interest where, as here, the

plan administrator both has discretion to make determinations of eligibility under the

plan and funds the plan.  However, that conflict does not alter the standard of

review but is merely a factor to be considered in determining whether the decision

was arbitrary and capricious.  *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433

(6th Cir. 1998).  The court reviews the administrative record and makes findings of

fact and conclusions of law accordingly.  *Wilkins v. Baptist Healthcare Sys., Inc.*,

150 F.3d 609, 619 (6th Cir. 1998).  If it is possible to give a reasoned explanation

for the administrative decision which is based on the evidence, then the decision is

not arbitrary or capricious.  *Davis v. Kentucky Fin.*, 887 F.2d 689, 693 (6th Cir.

1989).

      A.    Plaintiff's Motion for Judgment Reversing the Administrative Decision

      The plaintiff contends that it was arbitrary and capricious for Hartford to

reject the opinion of his treating physician in favor of the opinion of its own

vocational case managers.  The plaintiff argues that Hartford's failure to obtain any

8

independent opinions of the plaintiff's condition or to consider the favorable decision by the Social Security Administration is evidence that there is no reasonable explanation for the termination of benefits.

When a court reviews a plan administrator's decision, the practices of which the plaintiff complains are merely factors to be considered, in the context of the record as a whole, in determining whether the decision was arbitrary and capricious. *See generally Calvert v. Firstar Fin., Inc.*, 409 F.3d 286 (6th Cir. 2005).

In contrast to the social security context, ERISA administrators are not required to accord deference to the opinion of a claimant's treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) ("courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation").  Notwithstanding, "a plan administrator may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician." *Evans v. UNUMProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006).  Rejection of a medical opinion is not arbitrary or capricious where the opinion is not supported by objective medical evidence as required by the plan. *Boone v. Liberty Life Ins. Co.*, 2005 U.S. App. LEXIS 28405 (6th Cir. Dec. 20, 2005); *see also Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370

F.3d 869, 880 (9th Cir. 2003) (treating doctors' opinions properly rejected where statements of disability were conclusory).

Because the Social Security Administration, unlike ERISA administrators, is bound by objectively verifiable treating physicians' opinions, and because ERISA determinations are based upon discrete plan language as opposed to uniform federal standards, the Sixth Circuit has held it incongruous to bind plan administrators to Social Security Administration decisions. *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005). However, a social security award should not be disregarded; to receive deference from the Social Security Administration, the opinion must have been supported by objective findings, and courts may not arbitrarily disregard reliable medical evidence. *Black & Decker*, 538 U.S. at 834; *Calvert*, 409 F.3d at 294.

Finally, although it may be useful to obtain an independent medical evaluation ("IME") before making a disability determination, a plan administrator is not required to do so. *Evans*, 434 F.3d at 877. However, "the failure to conduct a physical examination -- especially where the right to do so is specifically reserved in the plan -- may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Calvert*, 409 F.3d at 295. The court in *Evans*, for example, found that a decision to terminate LTD benefits was arbitrary and capricious where the plaintiff produced reliable medical evidence of her disability and, in addition to offering reasons for its decision that were not based on

10

the plan document, ignoring the stressful nature of the plaintiff's job, and exhibiting a conflict of interest, "never sought independent medical review, either in the form of file review or an actual examination, but instead relied solely on file review by its in-house staff physicians." *Id.* at 879. *Cf. Boone,* 2005 U.S. App. LEXIS at *10-11 (treating doctors' opinions with minimal objective evidence properly rejected in favor of opinion of reviewing nurse); *Jordan*, 370 F.3d at 880 (denial based on record reviews by defendant's own physicians not arbitrary and capricious where treating doctors' opinions were conclusory and reviewing doctors gave more thorough and careful explanations).

Therefore, although neither Hartford's rejection of Dr. Tibbs's opinion, its disregard for the plaintiff's social security award, its reliance solely on a vocational review of his medical records, nor its inherent conflict of interest standing alone warrants reversal, the court considers each factor individually, as well as in their cumulative effect, in assessing the reasonableness of the termination.  Upon review of the record, the court finds that Hartford's decision was arbitrary and capricious.

In denying the plaintiff's application for LTD benefits, Hartford claims that Dr. Tibbs's failure to perform a comprehensive physical examination precluded it from correlating his symptoms to his impairment.  Hartford gives no reason, however, for rejecting, and indeed not even mentioning, the two MRIs that confirmed cord compression, residual canal stenosis at C3 through C6, and degenerative disc disease.  Furthermore, the in-house vocational assessments do not offer an

interpretation of the MRI results that differs from Dr. Tibbs's evaluation.  The denial also fails even to mention the favorable social security decision, and the lack of any attempt to distinguish the two decisions is further evidence of unreasonableness.

Although the failure to obtain an independent medical evaluation does not automatically render the decision arbitrary and capricious, it is significant to note that Hartford relied solely on the opinions of its in-house vocational experts; it did not obtain a second medical opinion at all.  The fact that Hartford credited the conclusions of its own non-medical staff instead of that of his treating physician weighs against finding that a reasonable explanation exists for Hartford's decision.

Hartford asks the court to view the facts in this case as substantially similar to those in *Jordan*, in which the Ninth Circuit found that the administrator's denial of benefits was reasonable where it rejected the opinions of the claimant's treating physicians in favor of its own reviewing physicians' opinions.  370 F.3d 869. *Jordan* is distinguishable, however, in several significant aspects.  First, the plaintiff in *Jordan* suffered from fibromyalgia, the existence of which is not shown by objective medical evidence.  *Id.*  Thus, the treating and reviewing physicians in *Jordan* were required to rely largely on the plaintiff's subjective complaints, and the record contained indications that her symptoms were not severe.  In this case, however, the reviewing experts, who were not doctors or nurses, did not offer any reason for rejecting Dr. Tibbs's interpretation of the available objective medical evidence.  Second, the reviewing physicians in *Jordan* offered "relatively more

12

thorough and careful opinions" than those submitted by the treating physicians, *id.* at 880; in contrast, the vocational experts who reviewed the plaintiff's file in this case apparently made the conclusory leap that, because Dr. Tibbs had not explicitly restricted him from sitting, he could perform sedentary work.  Finally, the only activities in which the plaintiff here reported engaging were walking in his yard and driving on a limited basis.  The claimant in *Jordan* reported that she did laundry, vacuumed, dusted, mopped, washed dishes, cooked, and shopped for groceries, all of which the plaintiff in this case denied being able to do.  The court therefore finds that the decision in *Jordan* is not persuasive in this instance.

B.    Hartford's Counterclaim for Declaratory Judgment

Hartford addressed its counterclaim for declaratory judgment at pages nineteen through twenty-two of its response memorandum.  The plaintiff did not discuss the counterclaim either in its memorandum in support of summary judgment or its reply memorandum.  The parties deemed that this matter could be resolved by motions for summary judgment, and they agreed upon a briefing schedule for doing so.  A party opposing summary judgment "may not rest upon the mere allegations or denials of [his] pleadings, but … must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).  The court has reviewed the record and the terms of the Plan and finds that Hartford is entitled to judgment declaring that it has overpaid the

13

plaintiff in the amount of $36,454.08 and is entitled to reimbursement in that amount.

## III.   Attorney's Fees

ERISA grants the court discretion to award reasonable attorney's fees and costs in actions brought under 29 U.S.C. § 1132.  29 U.S.C. § 1132(g)(1).  The decision whether to award attorney's fees is ordinarily based on five factors:

> (1) [T]he degree of the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy an award of attorney's fees; (3) whether an award of fees would deter other persons from acting similarly under like circumstances; (4) the relative merits of the parties' positions; and (5) whether the action conferred a common benefit on a group of [ ] plan participants.

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1981).  Hartford's termination of the plaintiff's benefits was made with little support on the record, and the court finds that there is no reasoned explanation based on the record for the decision.  However, the court does not find any indication that the termination of benefits was made in bad faith, particularly in light of Hartford's repeated attempts to elicit information from Dr. Tibbs and from the plaintiff and given the limited objective evidence submitted by the plaintiff.  Accordingly, the court does not find that an award of attorney's fees is warranted in this case.

## IV.   Conclusion

The court finds that Hartford's decision to terminate the plaintiff's LTD benefits was arbitrary and capricious.  However, the court's responsibility is to

14

determine whether the administrator's actions were arbitrary and capricious, not to determine "whether [the plaintiff] was, in [its] view, entitled to disability benefits." *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992). Accordingly, the court will grant the plaintiff's motion for summary judgment and remand his claim to the administrator for further proceedings consistent with this opinion.  Accordingly,

**IT IS ORDERED** that the plaintiff's motion for judgment reversing the administrative decision (DE 14) is **GRANTED**, and the plaintiff's claim shall be **REMANDED** to the Plan administrator for further proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** that the defendant's counterclaim for declaratory judgment (DE 4) is **GRANTED**, and the court **ADJUDGES** that Hartford has overpaid plaintiff in the amount of $36,454.08 and is entitled to repayment by the plaintiff in that amount.  That amount may be deducted from any award of benefits which the plaintiff may ultimately recover.

**IT IS FURTHER ORDERED** that the plaintiff's request for attorney's fees is **DENIED**.

Signed on April 14, 2006

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY